## HOYT v. WHITE.

The personal services and earnings of the wife and the profits and income of any business in which she may engage, at common law, and under our statutes of 1846 and 1860, relating to the rights of married women, belong to the husband absolutely and cannot be held by the wife to her sole and separate use.

But while the husband may thus enjoy and appropriate the earnings of the wife and the profits of her services, still, under our law regulating the trustee process, the husband's creditors cannot, on that process, hold any of the avails of the wife's personal services or earnings.

The distinction between the terms "*personal services and earnings*" and "*labor*" as used in our statute regulating the trustee process.

THIS action is brought against James White and several trustees, and Mahala White, claimant of fund in trustees' hands. Mahala White, the claimant, is the wife of the defendant. Before marriage they made a marriage contract which is referred to in the opinion.

In 1864, at the date of the writ, and for several years before, the said Mahala was keeping a boarding house in Manchester, in her own name, and the trustees were boarding with her, and, at the time of the service of this writ, were indebted for board.

The husband made the boarding house his home, but spent a portion of his time in Deering, in farming. The wife purchased with her own money the household furniture and all things necessary for keeping the boarding house. Some things for furnishing the table she purchased of the husband. The husband was insolvent, and the wife had property. The husband and wife intended that she should keep the boarding house in her own name, and for her own benefit, so that his creditors could not attach and hold the proceeds of the boarding business.

The demand sought to be recovered by this action, is a promissory note given by the husband for boots and shoes, a part of which were for the claimant, and part for the defendant's family.

The questions arising in the case were reserved.

*Clough*, for plaintiff.

*Eastman & Cross*, for claimant.

SARGENT, J.   In this case there was an ante-nuptial contract in which it was stipulated that after marriage the wife should continue to hold " the whole right, title, interest and property in the real and personal estate and rights of action, to which she shall become entitled after the said marriage by descent, devise, purchase or otherwise, or of which she may be seized or possessed at the time of her marriage, to her sole and separate use free from the control or interference of her husband." This contract was dated January 12, 1849.

At the time of the marriage the wife had property, but the husband was insolvent, and it seems has remained so.   The wife has carried on the boarding business for several years, having purchased her furniture to furnish her boarding house, with her own money, as well as the provisions and other things necessary to carry on the same, the husband boarding with her a part of the time, and carrying on a farm in Deering the remainder, she carrying on the boarding business in her own name, by his consent, and for her sole benefit.

This plaintiff has no claim upon the wife or upon her separate property for the payment of this debt.   He gave the credit to the husband alone, and not to the wife, and even though the purchases made by the husband were necessaries for his wife and family, that does not make her liable to pay for them.   Nor does it constitute any fraud upon his creditors, that he supplies his wife and family with shoes, though she may have separate property, even more than her husband.   The statute of 1846, giving additional rights to married women, does not in any way change or lessen the duty of the husband to provide for his wife and family if he is able to do so.

It is one of the few privileges that has never been questioned, to my knowledge, which husbands still possess, notwithstanding all the rights that the laws have recently conferred upon married women, and all the privileges which many women have assumed to exercise under the name of woman's rights, some of which are not yet recognized by statute, to furnish his better-half with shoes and other necessary clothing, provided he can and will, without regard to the fact as to whether the wife have separate property or not.

But the principal questions are, Does any part of the money due from these trustees for board belong to the husband? And if so, can it be taken to pay his debts, by the trustee process?

By the common law, personal chattels in possession which belonged to the wife at the time of the marriage, or which fell to her afterwards, became instantly the absolute property of the husband, while her choses

in action became his only by his asserting title to them and reducing them to possession. But in this State the right of the husband in both cases is to be regarded as a marital right to be enforced by him or waived at his pleasure. If waived, the property, whether it consists of personal chattels, money, or choses in action, remains the property of the wife. *Hall* v. *Young,* 37 N. H. 134 and cases cited; *Jordan* v. *Cummings,* 43 N. H. 134; *George* v. *Cutting,* Sullivan County, July Term, 1865.

But the case stands differently in regard to the personal services and earnings of the wife. These, after marriage, belong to the husband. It can hardly be said that he has any election in that matter, nor is there any reducing to possession in such case, for the nature of the union is such, that, from the time of the marriage until a legal separation, the services and earnings of the wife belong to the husband, as much as his own; in law, they are his own. Our statutes of 1846 and of 1860 make no provision for the wife's holding her own services and earnings to her own separate use after marriage and there was no attempt, in the ante-nuptial contract in this case, to provide that such should be the case; and since we have no law authorizing it, a gift by the husband to the wife of her personal services and earnings, after marriage, might stand upon the same ground as a gift to her of the husband's money or other property, which might not be valid as against his creditors, if he had otherwise made suitable provisions for her support and maintenance. The provisions of our statutes are for the wife's holding her real estate and personal property and choses in action, which she may have at the time of her marriage or such as may be inherited by, bequeathed, given or conveyed to, her after marriage, &c. provided it is not procured by any payment or pledge of the husband's property.

In Massachusetts, their statute of 1855, besides making similar provisions to those made in our statute for married women, contains this in addition, chap. 304, sec. 7: "Any married woman may carry on any trade or business and perform any labor or services, on her own sole and separate account, and the earnings of any married woman, from her trade, business, labor or services, shall be her sole and separate property and may be used and invested by her in her own name, and she may sue and be sued, as if sole in respect to her trade, business, labor, services and earnings." Under this statute it was held in *Parker* v. *Simonds,* 1 Allen 258, that a married woman, who carries on the business of keeping boarders on her sole and separate account, and has purchased goods to be used in her business upon her sole credit, is liable therefor, although her husband lived with her at the time when the goods were purchased, but that she was not liable upon a note given by her in payment for goods originally sold and charged to the husband.

But, in New York, under the acts of 1848 and 1849, which authorized a married woman to take and hold, as her separate estate, all property acquired by inheritance, gift, grant, devise or bequest from any person other than the husband (which would seem to be very similar to the provisions of our statute) it was held in *Rider* v. *Hulse,* 33 Barb. S. C. Rep. 264, that the fruits of the wife's own labor, or the profits or income of any business in which she might have embarked, did not fall

within the meaning of said acts. But that such fruits of the wife's labor and the profits or income of such business, carried on by the wife, belonged to the husband absolutely.

We can see no good reason why the law should not be held the same way in this State, both as it stood in 1849 and as it now stands. The husband's assent to the wife's carrying on business on her own account, could not avail anything as against his creditors, more than any other gift of property by him to his wife. But, assuming that the profits or income of the boarding business, conducted by the wife in this case, belonged to the husband, while the furniture and provisions belonged to the wife, can such profits or income of the wife's labor or services, be holden by the husband's creditors upon the trustee process?

By our statute "no person summoned as trustee shall be charged as such on account of the personal services or earnings of the wife of the debtor at any time, or on account of any labor performed by the debtor or any of his family after the service of the process or within fifteen days prior to such service." The term *labor* as used in this section and in the homestead act has received judicial consideration and construction in *Robinson* v. *Aiken*, 39 N. H. 211, and in *Weymouth* v. *Sanborn*, 43 N. H. 171. I am not aware that the term *personal services or earnings* as applied to the wife has been considered or defined in any judicial decision.

Something more is evidently intended here by the term *services and earnings*, as applied to the wife, than by the term *labor* as applied to any of the debtor's family. It is said in *Weymouth* v. *Sanborn*, that claims for labor would not ordinarily be understood to embrace the services of the clergyman, physician, lawyer, commission merchant, or salaried officer, agent, railroad or other contractor, but would be confined to claims arising out of services where physical toil was the main ingredient although directed and made more valuable by mechanical skill. But not so with the personal services and earnings of the wife. Her earnings may be as well for works of skill and science as for mere physical toil. Suppose the wife to be a practising physician, her services and earnings cannot be reached by trustee process. Is she an artist? Her services and earnings are exempt. Is she a musician, the most skillful performer at the opera, or the most gifted singer at the concert? It might not be her labor, but would be her services. In fact, we ordinarily speak of the services of the physician and lawyer with particular reference to their skill, rather than the amount of physical toil they perform. We procure the services of engineers, architects, sculptors, painters, stage players, master builders, &c. The earnings of a person generally depend more on the degree of skill than the amount of physical toil. To the conducting and managing of trade, of hotels, of factories, of machine shops, and of boarding houses, men devote their own services, or employ others to do so, and the wife, while engaged in trade or in keeping boarders, is simply in the service of the husband—is earning money for him by these services.

Because the law may not, in this State, give to the wife the right to hold her earnings—the pay for her services—to her separate use as against

her husband as she may in Massachusetts, still it does not necessarily follow that the husband's creditors can hold these earnings on the trustee process, for the statute declares that these services cannot be attached, or her earnings be held on that process, so that instead of the wife's holding these services and earnings to her separate use, the husband can hold and enjoy them alone or in company with his wife without his creditors having the power to deprive him or them of them.

It makes no difference, that the wife would be obliged, in order to recover the price of this board by suit, to sue in the name of the husband or to have his name joined with her own as plaintiffs. All his interest in the same would result from the personal services and earnings of the wife, which his creditors cannot hold, at least, in this way. So that while the claimant in this case can hold only a part of the fund in the hands of the trustees, to her sole and separate use, yet the balance is thus secured to the husband and the

*Trustee must be discharged.*